UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILDSEED MOBILE LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>GOOGLE LLC, et al.,<br><br>    Defendants. | Case No. 22-cv-04928-WHO<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AS TO CLAIMS II, III, AND IV**<br><br>Re: Dkt. No. 92 |

## INTRODUCTION

Defendants Google LLC and YouTube LLC move to dismiss three of five patent infringement claims brought by plaintiff Wildseed Mobile LLC ("Wildseed"), arguing that they are directed to abstract ideas and fail to claim patent-eligible subject matter under 35 U.S.C. § 101. I agree that the '960,'021, and '040 patents are directed to patent-ineligible abstract ideas, do not improve device functionality, and do not contain any inventive concepts. These patents are invalid under § 101. Accordingly, defendants' motion for partial judgment on the pleadings is **GRANTED**, and Claims II, III, and IV of the First Amended Complaint ("FAC") are dismissed with prejudice.

## PROCEDURAL BACKGROUND

Wildseed filed this action against defendants in the U.S. District Court for the Western District of Texas and filed the operative first amended complaint on May 9, 2022. *See* First Amended Complaint [Dkt. No. 46] ("FAC"). In that complaint, Wildseed accused defendants of infringing five of its patents. The parties stipulated to transfer the case to this District in August 2022.

Defendants bring a motion for judgment on the pleadings under Federal Rule of Civil

Procedure 12(c), contending that three of the five asserted patents are invalid because they are directed at unpatentable subject matter under 35 U.S.C. § 101. Dkt. No. 92 ("Mot."). The patents at issue in this motion are U.S. Patent Nos. 9,141,960 (the "'960 patent"), 10,251,021 (the "'021 patent"), and 10,959,040 (the "'040 patent").

Although claim construction is sometimes necessary to resolve whether a patent claim is directed to unpatentable subject matter, the Federal Circuit has clarified that "claim construction is not an inviolable prerequisite to a validity determination under § 101." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can. (U.S.)*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2013). Where the court has a "full understanding of the basic character of the claimed subject matter," the question of patent eligibility may properly be resolved on the pleadings. *Content Extraction*, 776 F.3d at 1349. The parties agree that no claim construction is required to resolve this motion.

## FACTUAL BACKGROUND

The Wildseed patents claim priority to U.S. Provisional Application No. 60/945,677, filed on June 22, 2007 (*See* Ex. A, the '677 Application), with the earliest non-provisional filing date of June 23, 2008. An analysis of the validity of these patents focuses on the state of the art at that time. "The Court need not individually analyze every claim under the *Alice* rubric if certain claims are "representative."" *Esignature Software, LLC v. Adobe Inc.*, No. 22-CV-05962-JSC, 2023 WL 2808381, at *3 (N.D. Cal. Feb. 21, 2023) (citing *Twilio*, 249 F. Supp. 3d at 1141). While each patent contains multiple independent claims, at this procedural posture, I will treat Claim 1 of the '960 patent as representative because the claims are substantially similar and are all linked to the same abstract idea.[1] Each patent at issue is directed at using information about the media contained on a user's mobile device and the user's location to recommend nearby venues or events that would appeal to the user.

1. **Claim**

Claim 1 of the '960 patent claims portable media players that utilize (1) what a person likes

---

[1] Wildseed asserts 24 claims in the '960 patent, 17 claims in the '040 patent, and 12 claims in the '021 patent, but treats Claim 1 of the '960 patent as representative. Opposition ("Opp.") [Dkt. No. 103] 5:15.

United States District Court
Northern District of California

1  (preferences) and (2) where a person is (location) to (3) recommend a venue/event:

2  It recites a method comprising:

3  [a] retrieving, by a server, a plurality of media stored on or accessed using a portable

4  media player device, or information about said plurality of media;

5  [b] inferring, by the server, based at least in part on the retrieved plurality of media

6  or the retrieved information about said plurality of media, one or more entertainment

7  preferences of a user of the portable media player device;

8  [c] accessing, by the server, one or more sources of information about venues or

9  events proximal to a current location of the user;

10  [d] identifying, by the server, at least one of said venues or events as being of interest

11  to the user based at least in part on the one or more entertainment preferences

12  inferred by the server and the current location of the user;

13  [e] generating, by the server, a recommendation indicating the identified venue or

14  event as a venue or event of interest to the user; and

15  [f] communicating, by the server, the recommendation to the user.

U.S. Patent No. 9,141,960 [Dkt. No. 46-2] Ex. B at 8:5-25.

2. **Specification**

The specification of the '960 patent describes how a user's location could be inferred:

> The server may estimate the current location of the portable media player device based on a location of a wireless access point through which the portable media player device establishes a network connection to the server. Or, the server may estimate the current location of the portable media player device based upon the results of triangulating signals from various signal towers or based upon the server's communication with other portable media player devices having known current locations. The server might also receive the current location of the portable media player device from a global positioning system (GPS) module located within the portable media player device.

*Id.* at 4:39-51.

The specification also elaborates on how the user's entertainment interests are inferred:

> In various embodiments, the server can analyze the media and the information about the media stored on or accessed using the portable media player device to identify user preferences for particular genres

3

> of media. Thus, in various embodiments, the server may analyze e.g. the meta data associated with a wide variety of media stored on or accessed using the portable media player device such as music, podcasts, books or audiobooks, video, photos or other images for various trends that can be translated into user preferences for a particular genre of music, film, video or art. The meta data may include data about the media title, media type, artist, subject matter, and so forth. For example, the server may determine that the user has a preference for a jazz music genre if the portable media player device stores or has been used to access a substantial amount of music by famous jazz artists such as Ella Fitzgerald or Louis Armstrong. What constitutes a substantial amount may be evolved dynamically overtime based on feedback on the relevance, success or usefulness of the recommendation and/or information provided to the user or a group of users. The server may also determine that the user has a preference for film genres related to science fiction if a significant number of science fiction movies such as Close Encounters of the Third Kind or Star Wars are stored as video media in or accessed using the portable media player device.

*Id.* at 5:22-46.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), judgment on the pleadings is proper when, accepting all material allegations in the nonmoving party's pleadings as true, the moving party is entitled to judgment as a matter of law. *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). Defendant argues that the '960,'021, and '040 patents are ineligible for patent protection under 35 U.S.C. § 101 as a matter of law. *See In re Roslin Inst. (Edinburgh)*, 750 F.3d 1333, 1335 (Fed. Cir. 2014) ("Section 101 patent eligibility is a question of law").

35 U.S.C. § 101 "defines the subject matter that may be patented under the Patent Act." *Bilski v. Kappos*, 561 U.S. 593, 601, 130 S.Ct. 3218, 177 L.Ed.2d 792 (2010). Under § 101, patentable subject matter includes "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. "These categories are broad, but they are not limitless." *Twilio, Inc. v. Telesign Corp.*, 249 F. Supp. 3d 1123, 1136 (N.D. Cal. 2017). "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216, 134 S.Ct. 2347, 189 L.Ed.2d 296 (2014) (internal citation omitted). This is so because "they are the basic tools of scientific and technological work," which are "free to all men and reserved exclusively to none." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 70, 132 S.Ct. 1289, 182 L.Ed.2d 321

(2012) (quotation marks omitted). Allowing patent claims for such purported inventions "would tend to impede innovation more than it would promote it." *Id.* But Courts must "tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Alice Corp.*, 573 U.S. at 217, 134 S.Ct. 2347. "At some level, all inventions embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id.* Accordingly, "applications of such concepts to a new and useful end . . . remain eligible for patent protection." *Id.*

The two-step "Alice" framework distinguishes "patents that claim laws of nature, natural phenomena and abstract ideas from those that claim patent eligible applications of those concepts." *Id.* First, the Court must "determine whether the claims at issue are directed to a patent-ineligible concept." *Id.* If so, the Court then assesses "whether the elements of the claim, both individually and as an ordered combination . . . transform the nature of the claim into a patent eligible application." *Id.*

The Federal Circuit has held that the inventive concept in step two of this analysis must be contained in the claim itself, "as opposed to something purportedly described in the specification." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017). However, the Federal Circuit clarified that it is appropriate to use the specifications to "inform [the court's] understanding of the claimed invention and the technological solution," and "how the elements in the claim functioned together." *Mentone Sols. LLC v. Digi Int'l Inc.*, No. 2021-1202, 2021 WL 5291802, at *5 (Fed. Cir. Nov. 15, 2021). Accordingly, the specification cannot save claims directed at an abstract idea but can inform my understanding of whether the claimed invention provides a technological solution or inventive concept that transforms the claim into a patent-eligible application.

**DISCUSSION**

**I.   Alice Step One: Whether the claims are directed to an abstract idea**

At *Alice* step one, a court decides whether the patents' claims are directed to an "abstract idea." This inquiry has two parts. First, I must identify precisely what the claims are directed to accomplish. Second, I must determine whether that "focus" is an abstract idea. *Esignature Software, LLC v. Adobe Inc.*, No. 22-CV-05962-JSC, 2023 WL 2808381, at *3 (N.D. Cal. Feb. 21,

2023).

## A. Identification of the focus

The identification step must be done with "enough specificity to ensure the step one inquiry is meaningful." *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1347 (Fed. Cir. 2017). "Describing the claim at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016).

Wildseed characterizes its patents as being "directed to patent-eligible improvements to portable media players' functionality that build on the inherent technical capabilities of portable media players to improve the overall user experience." Opp. 11:6-8. It elaborates that the "specification and claims are aligned to describe functional improvements (i.e., venue/event recommendations based on a user's inferred location and preferences) in a non-generic environment (i.e., portable media players)." Defendants characterize the patents as being directed to "customizing information (recommendations) based on information known about the user (media stored on their devices) and specific data (location)." Mot. at 11:22-25. Wildseed's characterization makes a conclusory assertion that the claims describe a functional improvement to portable media players. While I must accept the nonmovants material allegations as true, I need not credit conclusory allegations. *See Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (describing the analysis under Rule 12(c) is "substantially identical" to analysis under Rule 12(b)(6)).

While defendants' characterization seems to be high level, it appears to accurately describe the claims. More precisely, the claimed inventions are directed toward providing tailored event and venue recommendations to users. They do so through a specific method that evaluates information accessible within mobile devices, including their location and the genres of media stored on them, thus improving the usefulness of its recommendations to the user. The specific method for accomplishing the goal, however, is a question for step two of the *Alice* analysis. And novelty is irrelevant to step one of the Alice analysis. "We may assume that the techniques claimed are groundbreaking, innovative, or even brilliant, but that is not enough for eligibility."

6

*SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018) (internal quotation and citation omitted).

### B. Whether the focus is abstract

Having determined that the focus of the claimed invention is providing tailored event and venue recommendations to users, I must determine whether that focus is indeed an abstract idea. "Neither the U.S. Supreme Court nor the Federal Circuit has set forth a bright line test separating abstract ideas from concepts that are sufficiently concrete so as to require no further inquiry under the first step of the *Alice* framework." *Twilio*, 249 F. Supp. 3d at 1138 (citing *Alice*, 573 U.S. at 221, 134 S.Ct. 2347). Rather, courts "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).

The parties cite a number of conflicting cases to support their arguments on whether the focus of the patents is abstract. Most persuasive to me is the Federal Circuit's discussion of advertising in *Intell. Ventures I LLC v. Cap. One Bank (USA)* 792 F.3d 1363 (Fed. Cir. 2015)). There, one patent at issue related to tailoring information displayed on a webpage based on the viewer's location information, and another related to tailoring that content based on navigation information such as the time of day. The court called this "minimal tailoring" an abstract idea. *Id.* at 1369. It analogized to the long-standing practice of tailoring advertisements based on a newspaper reader's location by providing different inserts based on distribution location. And it described tailoring TV commercials based on the time of day that a viewer is watching as being an abstract idea. *Id.* Wildseed's patent seems to claim a combination of these two concepts, similar to running a television commercial in a particular geographic area while also accounting for the genre of the television show itself. This, too, is an abstract idea.

Wildseed relied on two cases: *Contour IP Holding, LLC v. GoPro, Inc.*, No. 3:17-CV-04738-WHO, 2021 WL 4148651 (N.D. Cal. Sept. 13, 2021) and *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299 (Fed. Cir. 2018). Neither helps it.

In *Contour*, a case I decided, the patents were directed to solving a concrete functional problem associated with point-of-view video cameras: that users could not readily see and control

7

the video while using the cameras for their intended purpose (i.e., attached to the body during movement). *Id.*, *8. The patent accomplished this by streaming a low-quality video to a smartphone so that the user could watch what was being recorded. It stored a high-quality video that would ultimately be used, and received specified control signals from the smartphone so that users could control the image from the smartphone. On that basis, I held that "[i]f an abstract idea is applied in a non-generic environment and embodied a functional improvement, it succeeds at step one." *Id.* I distinguished this holding from *FullView*, where the district court had made an explicit and uncontested finding that putting together multiple images to form a panoramic one is something that the visual cortex did since the "dawn of humanity." *Id.* (citing *FullView, Inc. v. Polycom, Inc.*, 485 F. Supp. 3d 1156, 1163 (N.D. Cal. 2020). In *Contour*, the moving party did not provide any basis to draw a similar conclusion.

By contrast, Google has persuasively argued that making event and venue recommendations based on information about a user's media preferences and location has long been done by humans without the aid of technology. That a handheld portable device constitutes a non-generic environment is unpersuasive. A handheld device is not functionally distinguishable from any other portable device in this context: it simply acts as a computer that performed a function that has previously been performed without one.

*Finjan* is similarly inapplicable. There, the Federal Circuit noted that performing a virus scan on an intermediary computer, as opposed to the user's computer, is abstract. *Finjan* at 1304. But the patented method at issue in *Finjan* "does a good deal more." *Id.* Conventional virus scans used "code-matching" to recognize the presence of viruses by cross-referencing to a database of known virus code. *Id.* Finjan's patent was directed at a specific functional improvement to virus scans by employing a downloadable file that enabled a "behavior based" virus scan. *Id.* This behavior-based scan identified suspicious code based on its behavior, such as "potentially dangerous or unwanted operations—such as renaming or deleting files." *Id.* It constituted an improvement to computer functionality. Wildseed does not claim an improvement to computer functionality. Instead, it claims an abstract idea "for which computers are invoked merely as a tool." *Id.* (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335–36 (Fed. Cir. 2016)).

## II. Alice Step Two: The presence of an inventive concept or improvement to computer functionality

At step two of *Alice*, I must "consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016) (internal quotation marks and citations omitted). In doing so, I must "search for an inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 134 S. Ct. at 2355 (internal quotation marks and citations omitted). But this allegedly inventive concept "cannot simply be an instruction to implement or apply the abstract idea on a computer" and "must be significantly more than the abstract idea itself." *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).

Generally, this innovation "must involve more than performance of well-understood, routine, [or] conventional activities previously known to the industry." *Content Extraction & Transmission LLC v. Wells Fargo Bank*, N.A., 776 F.3d 1343, 1347–48 (Fed. Cir. 2014). "[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 1348. However, "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *BASCOM*, 827 F.3d at 1350.

Wildseed contends that the requisite "inventive step" lies in "the combination of portable media players and the added functionality of providing venue/event recommendations based on the inferred location and preferences of the user." Opp. at 5:25-27. It characterizes this as an improvement to the mobile device's functionality, building on its inherent functionality of storing media and being connected to the internet. But this is still an abstract concept, and Wildseed's claims cover every technical implementation of the concept. That the specification provides some examples of how this might be accomplished does not change that the patents would apply to *any* means of tailoring recommendations based on a combination of the user's location and "entertainment preferences," as inferred based on the "plurality of media" stored on the user's

device. As those technical means continue to develop, Wildseed's patents would continue to apply.

Evaluating the claim as an ordered combination yields the same result. The order of the steps is not inventive: collect information, analyze it, and communicate the result of that analysis—in the conventional order. *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017) (holding that "[t]he claim uses a conventional ordering of steps—first processing the data, then routing it, controlling it, and monitoring its reception—with conventional technology to achieve its desired result.").

Wildseed cites *Weisner v. Google LLC* for the proposition that search queries targeting a geographic area can contain an inventive concept. *Weisner v. Google LLC*, 51 F.4th 1073, 1086 (Fed. Cir. 2022). There, the Federal Circuit explained that the process at issue was "more than just the concept of improving a web search using location history—[but] a specific implementation of that concept." In one patent, this was achieved by using a reference individual who had visited similar locations to the target user in order to refine recommendations to the target user. *Id.* In another patent, it was by searching the location history of the target user in order to improve computerized search results. *Id.* It was these specific solutions, not the wider concept as articulated by Wildseed, that the Federal Circuit found to be plausibly protectable on a 12(b)(6) motion.

Wildseed also argues that the patents are narrowly drawn because they are limited to mobile devices, not including laptops and tablets. It points to examples of portable media players available at the time that are referenced in the patent itself: "the ipod available from Apple Computer," "the Zune available from Microsoft Corporation" and "the ibiza™ Rhapsody® from Varia Mobil." '960 at 1:37-41.

To be sure, mobile devices were less sophisticated and less prevalent in 2008 than they are today. But whether it is a mobile device or a laptop implementing the claim, it is still ultimately a computer implementation of something a human could do, and would previously have done. This is illustrated by the language used in the claim itself: retrieving, inferring, accessing, identifying, generating, and communicating. Aside from some "generic computer-implemented steps, as in

*Intel. Ventures I*, there is nothing in the claims themselves that foreclose them from being performed by a human, mentally or with pen and paper." *Intel.Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016). This lack of specific implementation (aside from reciting capabilities of the mobile devices themselves) belies a finding that the patents improve the functionality of the mobile devices.

## CONCLUSION

For the foregoing reasons, I find that the '960,'021, and '040 patents are invalid under § 101. They are directed to an abstract idea and do not contain sufficient inventiveness to transform the concept into patentable subject matter. Accordingly, defendants' motion for judgment on the pleadings is **GRANTED**, and counts II, III, and IV of the FAC are **DISMISSED**.

**IT IS SO ORDERED.**

Dated: June 7, 2023

William H. Orrick
United States District Judge